The Lessee of PRETTYMAN WALLS *vs.* JOHN M'GEE et al. tenants.

The jury directed to presume a *patent* from the State on proof of a warrant one hundred and three years old—located sixty-seven years ago—and a possession of eighty-eight years.
Thirty years' possession will not give title as against the State.
An alteration of the record of an old survey unaccounted for, but proved to have been recently done, will not affect rights previously existing under it.

EJECTMENT for ninety and three quarters acres of land in Indian River hundred.

The plaintiff's lessor in this case claimed title under a patent from the State dated in 1842, founded on a general or "floating" warrant and survey; the warrant dated in 1795, and survey made in pursuance thereof in 1842. The warrant was issued by Jos. Russell, recorder of deeds for Sussex county, to Rhodes Shankland, surveyor,

directing him to survey for Daniel Polk, his heirs or assigns, " a piece or parcel of vacant land in Sussex county, not exceeding two hundred acres." This warrant was assigned by indorsement under seal, from Daniel Polk to James Stayton in 1795; from Stayton to C. S. Layton in 1840, and from C. S. Layton to Prettyman Walls in 1842. The warrant was located on the lands in question, and a survey and plot made for Mr. Walls in 1842; and a patent granted to him on payment of the caution money.

The defendant showed a warrant to Robert Lacey, dated in 1741, for one hundred acres of land; located by Rhodes Shankland for Lacey in May, 1777, for three hundred and forty-three acres, including the land in question. The record of this survey was obliterated and altered by a change of lines so as to throw out the land in question, and this alteration was unaccounted for; though it appeared to have been made more recently than the year 1800. The defendant proved a possession in himself for more than thirty years, and a possession in Robert Lacey for eighty-eight years; but showed no connection of title between himself and Lacey; and he could not produce any patent completing the title of Lacey.

The plaintiff's counsel contended, that the possession of M'Gee, though for more than thirty years, being without color of title, would not give title even as against an individual claimant. (Ang. on Lim. 73; 5 Cow. Rep. 346; 9 Wend. 511;) and that a length of possession, such as that, would not bar the right of the State which in this case had been granted to the plaintiff's lessor. (Ang. Lim. 366-9.)

Ridgely contra, for the defendants, insisted—1st. That the survey to Robert Lacey in 1777, under his old warrant, divested the title of the State by force of the act of June, 1793, (Dig. 544-5,) which provides that titles held under " any grant, warrant, survey, resurvey or patent," made between 1776 and 1792, shall be good and available in law and equity. 2d. That after this lapse of time, viz: one hundred years from the warrant to Lacey, and sixty-seven since the location and survey, the court would direct the jury to presume a patent or grant from the State. He cited on the doctrine of presumptions Roscoe Evid. 17; Cowp. Rep. 108-10-15; 12 Viner 58; 7 Term Rep. 492; 20 Law Lib. 194; 3 Stark. Ev. 1221, n; 2 Harr. Rep. 494; 6 Mass. Rep. 90. 3d. That the presumptions as to the alteration in the record of Lacey's survey were against the State and against the plaintiff who claimed under the State; for the record is in custody of the State's officers, and the alteration is against the defendant's interest and in favor of the title of the State; and the

inference is that these alterations were recent, because the adjoining tracts located in 1756, 1802 and 1817, all locate up to the original lines of Lacey's survey as to Lacey's land ; whereas, either of them would have discovered the vacant land now claimed, if the record of the lines of that survey had then been altered. 4th. That the effect of the alteration of this record, even if it would, unaccounted for, annul the return and survey, would divest no title accruing or held under it. (2 *Stark. Evid.* 476.)

BOOTH, *Chief Justice*, charged the jury—that as a general principle, acts of limitation will not run against the State ; nor can there be an adverse possession, strictly speaking, against the State such as can be against an individual; yet there are cases where from length of possession—rightful possession—a presumption will arise against the king, or against the State, to quiet the title. The most solemn papers have been presumed after a great lapse of time: grants; charters ; even acts of parliament, have been presumed. So in this country grants and patents from the State are presumed after a great lapse of time in conformity with lawful possession.

If Robert Lacey had a warrant one hundred and three years ago ; was in possession eighty-eight years ago ; located sixty-seven years ago ; it is a case where the jury ought to presume a patent from the State. Robert Lacey's entry was lawful, being under a warrant and survey, and being so in possession it is a fair presumption, after eighty-eight years, that the State perfected his title by a patent. This patent being presumed, the title is out of the State ; and the subsequent patent to Prettyman Walls conveyed no title. And that is in conformity with the act of 1793, which gives the same effect to these ancient titles by warrant and survey without patent. As to the mutilation of the record, if recent, it cannot divest the title previously vested by it.

The defendant's possession would be good against individual claimants, but thirty years possession is not sufficient against the State ; yet the plaintiff must recover on the strength of his own title and not on the weakness of the defendants ; he must show a title in himself, which he has not done, unless the State's grant to him was sufficient to convey a title, and this could not be if sufficient is proved from which the jury will presume a previous grant from the State to Robert Lacey.

                                               Verdict for defendants.

*Cullen,* for plaintiff.
*Ridgely,* for defendants.